## GREER v. STATE.

1 CRIMINAL LAW. *Evidence. Part of a conversation brought out does not entitle the opposite party to the whole. When.* Where counsel for the defense asked a witness if he had made a certain statement to "A," to-wit: "that he only wanted to get one swear at defendant, and he would hang him, etc." *Held*, that this did not entitle the prosecution to the entire conversation over the objection of defendant when "A" was not introduced to contradict witness, who denied positively the expression to "A." of such a desire. Had the witness been contradicted the rule might have been otherwise.

2. SAME. *Self-defense. Great bodily harm. How defined.* It is error to define "great bodily harm" to be such as would give one reasonable apprehension that life was in danger.

Case cited: Young v. State, 11 Hum., 201.

### FROM DAVIDSON.

Appeal from the Criminal Court.

ATTORNEY-GENERAL HEISKELL for the State.

No counsel marked for plaintiff.

FREEMAN, J., delivered the opinion of the court.

Greer was indicted and tried in the Criminal court of Davidson county for the murder of Jerry Green. Without going into a detailed statement of the facts at present, it is sufficient to say, that the line of defense was based on the assumption that Greer had gone in the way of the deceased for the purpose of urging the payment of a debt due him; that an altercation took place, when the deceased either

assaulted defendant or committed such an overt act, or so conducted himself, or that defendant had reason to believe, and did believe, he was in danger of his life or great bodily harm, or to use the language of the court in *Young* v. *The State*, 11 Hum., 201, "great violence to his person." Whether the proof makes out such a case we need not here discuss. It is sufficent for the settlement of the present question that this was the line of defense, and that the proof tended in some degree at least to furnish a basis for such contention on the part of the defense. On this question his honor, the criminal judge, charged the jury as follows: " But to excuse a homicide upon the plea of self-defense, it ought to appear to the satisfaction of the jury that the defendant was not in fault himself; that he declined to enter into any contest, fight or combat, with the deceased, and that he retreated from any conflict offered or menaced by the deceased, as far as he reasonably could with safety to himself; and that he avoided the necessity of taking the life of the deceased by every reasonable means within his power, and if he made use of a deadly weapon in his defense he ought to be able to show to the satisfaction of the jury that such defense was absolutely necessary; that he did all that he could to avoid the necessity, and that it was done to protect his own life, or to protect himself from such serious bodily harm as would give him a reasonable apprehension that his own life was in imminent danger, and that he used the weapon, having no other means of resistance, and no visible means of escape."

This statement of the law by his honor is not qualified by anything else in his charge on the question, although he, in subsequent parts of the charge, uses the language, that if the deceased believed, etc., "that deceased intended to do him great bodily harm." This language would naturally be connected with the previous more extended definition of the law on this subject, and be understood to mean such bodily harm as would give reasonable apprehension that his own life was in imminent danger, as had been previously explained by his honor.

In the case of *Young* v. *The State*, 11 Hum., 201, the court below had charged "that the party must have had reasonable ground to believe that the deceased would kill him, or do him great bodily harm, which might endanger his life." The court makes this one of the grounds for reversing that case, laying down the rule to be that "if the assault be of such character that the party assailed may reasonably apprehend death or great violence to his person," it justifies the assailed party in using such violence as will produce death. This case has been uniformly followed, and the rule is one well grounded in principle and authority. The charge before us does not conform to the rule, but is directly contrary to it, and the case must he reversed. There are several other errors in the charge, perhaps, if critically examined, but we need not discuss or point them out at present. A question is made on the admissibility of testimony on the trial, which it is proper to notice. On cross-examination of a witness defendant's counsel asked him

the following question: "Did you or did you not tell Jo. Canary, since the death of Jerry Green, that you just wanted to get one swear at defendant, a d—d little son of a b—h, and that you were coming to court to hang defendant?" to which the witness answered, "I never did, I am positive I did not. I told Jo. Canary I was a witness against the defendant." It is evident this question was put with the purpose of weakening the force of the testimony of the witness, if he admitted he had made the statement, by showing his bias against the prisoner, or if he denied, by contradicting by showing that he had made the statement. In re-examination the attorney-general asked the witness to state all he said to Canany in that connection, which was objected to by defendant. The objection was overruled by the court and the witness permitted to give the details of a quarrel between himself and defendant, in which the defendant cursed him and used very abusive and insulting language towards him.

This was a misapplication of a very familiar rule of evidence, that when one party brings out a part of a conversation the other is entitled by way of explanation, and as a matter of right, to all that was said in that conversation, though otherwise it might have been incompetent in that form. Here the defendant did not by his question bring out part of a conversation by way of proving facts favorable to his side of the case, but only asked if the witness made a certain statement, which he positively denied. This gave the other party clearly no right to introduce an

Greer *v.* State.

entire conversation that might injuriously affect the defendant, about a matter too not in any way connected with the case under investigation, and shedding no light whatever on it. If the witness had been contradicted by the introduction of Jo. Canary, it possibly might have been proper to have recalled him, and let him explain the conversation, but this is not certain; nor do we decide the question, as it is not raised.

The result however is, that the case must be reversed and remanded for a new trial.